**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DR. CHARLES MARTIN, an Illinois resident,** ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| v. ) | **No. 10 CV 3618** | |
| ) | | |
| **INTEGRAMED, INC., a Delaware corporation;** ) | **Judge Rebecca R. Pallmeyer** | |
| **MARYLAND & VIRGINIA PHLEBOLOGY, P.C., a** ) | | |
| **Maryland corporation; and VEIN CLINICS OF** ) | | |
| **AMERICA, INC., a Delaware corporation;** ) | | |
| **CLAUDE E. WHITE, a New York resident,** ) | | |
| ) | | |
| **Defendants.** ) | | |

**MEMORANDUM OPINION AND ORDER**

In May 2009, Dr. Charles Martin ("Dr. Martin" or "Plaintiff") entered into a Management Services Agreement ("Agreement") with Maryland & Virginia Phlebology, P.C. ("MVP") and Vein Clinics of America, Inc. ("VCA"), two medical corporations that operate clinics specializing in the treatment of venous disorders. The agreement designated VCA as the Manager of MVP and named Plaintiff a shareholder. Together with that agreement, Plaintiff executed a Stock Power and a Shareholder Limited Power of Attorney ("Power of Attorney"). In March 2010, VCA exercised the Power of Attorney, declaring its intention to purchase Plaintiff's interest for $100 for resale to another physician, Dr. Satish Vayuvegula. Believing that this transaction violated the parties' agreement, Plaintiff filed suit against MVP, VCA, IntegraMed, Inc.[1] and Claude E. White, the Vice President of VCA and Manager of MVP (collectively, "Defendants"), for breach of contract, breach of fiduciary duty, conversion, as well as several violations of the Maryland Code of Corporations and Associations. In response to Defendants' motion to dismiss the original complaint for failure to state a claim, Plaintiff filed an amended complaint.

---

[1] Plaintiff claims that IntegraMed, Inc. purchased VCA in 2008, but IntegraMed's website states that it acquired VCA in August 2007. (2d Am. Compl. at 3, ¶ 11; *see* http://www.integramed.com/about-us/whoweare.dot.)

On December 6, 2010, the court dismissed all counts in Plaintiff's First Amended Complaint without prejudice [Doc. No. 24], concluding that Plaintiff sought a remedy for an alleged breach of contract, but failed to identify which provisions of the parties' agreement had been breached. In a Second Amended Complaint, Plaintiff renews his claims for breach of fiduciary duty and conversion, and has added a request for a valuation of his shares in MVP. Defendants again move to dismiss, and for the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Second Amended Complaint, unless otherwise noted, and recounted in the light most favorable to Plaintiff. *Smith v. Medical Benefit Administrators Group, Inc.*, 639 F.3d 277, 279 (7th Cir. 2011).

### I. The Parties

Dr. Martin is a physician who specializes in phlebology: the diagnosis and treatment of varicose veins and other disorders of venous origin. (2d Am. Compl. at 3, ¶ 10.) Vein Clinics of America, Inc. ("VCA") and Maryland & Virginia Phlebology, P.C. ("MVP") are two medical corporations that operate clinics specializing in phlebology. (Defs.' Mot. to Dismiss at 2.) IntegraMed, Inc. is a speciality healthcare service provider.[2] Claude E. White is the Vice President of VCA and Manager of MVP. (2d Am. Compl. at 2, ¶ 6; VCA to Martin of 3/30/10, Ex. 3 to 2d Am. Compl.)

### II. Management Services Agreement

In January 2001, VCA hired Dr. Martin to serve as a Physician Manager at one of VCA's local clinics in Orland Park, Illinois. (2d Am. Compl. at 3, ¶ 12.) Beginning in 2007, Plaintiff also served as Medical Director for VCA at various other clinics in Maryland and Virginia. (*Id.* at 3, ¶ 14.) In May 2009, Dr. Martin, VCA and MVP entered into Management Services Agreement

---

[2] *See* http://www.integramed.com/about-us/whoweare.dot (last visited June 21, 2011).

2

("Agreement").[3] (*Id.* at 4, ¶ 20.) The Agreement formally defined the relationship between the parties, designating VCA the Manager of MVP and Dr. Martin as a shareholder. (Amended and Restated Management Services Agreement, Ex. 1 to 2d. Am. Compl.) Section 4.12 of the Agreement, the provision now in dispute, states, in relevant part:

> [I]mmediately upon the occurrence of a Transfer Event (as defined herein) all of the Stock held by the Shareholders . . . shall be immediately deemed transferred to the Designated Person (as defined herein), without action by the Shareholders. . . . The purchase Price shall be One Dollar ($1.00) per Share but no more than One Hundred Dollars ($100.00) in total price for all the Shares.

The Agreement made clear that VCA, as Manager, controlled the tenure of the shareholders. It defined "Transfer Event" to include the "date of Manager's written instruction to a Shareholder to transfer the Shares to a Designated Person." A "Designated Person" is defined as "an individual licensed to practice medicine in the State, who is designated by the Manager (VCA) to take ownership of the Shares." (Agreement at 4.12 (f).)

At the same time as he signed the Agreement, Plaintiff executed a Stock Power, granting VCA the power to transfer his shares in accordance with the Agreement between MVP, VCA and himself. (Stock Power, Ex. 2 to 2d Am. Compl.) Plaintiff also executed a Shareholder Limited Power of Attorney ("Power of Attorney") in which he appointed VCA as his "true and lawful attorney-in-fact," and authorized VCA to "take any and all actions on [his] behalf to effectuate the provisions of Section 4.12 of the Agreement." (Shareholder Limited Power of Attorney, Ex. F to Agreement; Power of Attorney, Ex. A to Defs.' Mot. Dismiss.) Plaintiff claims that at all times the stock certificates and power of attorney were "held for the benefit of Plaintiff" by Defendant Claude E. White, but neither MVP nor White ever issued the original stock certificates to him. (2d Am. Compl. at 6, ¶¶ 30, 33.)

---

[3] Defendant White is not a party to the Management Services Agreement between the parties. John M. Schruefer was a party to the agreement, but his role is not relevant for purposes of Plaintiff's claims. (Amended and Restated Management Services Agreement, Ex. 1 to 2d Am. Compl.)

**III.     Termination of Plaintiff's Interest in MVP**

On March 30, 2010, Defendant White sent Dr. Martin a letter stating VCA's intent to sell his stock interest to another physician specializing in phlebology, Dr. Satish Vayuvegula, pursuant to Section 4.12 of the Agreement.  (VCA Letter, Ex. 3 to 2d Am. Compl.)  The letter announced that the sale would be effective April 1, 2010.  Enclosed with the letter was a check for $100.00 in payment for Dr. Martin's shares.  (*Id.*)  Asserting that VCA had no authority to transfer his shares under the Power of Attorney, Plaintiff filed the instant suit alleging breach of fiduciary duty (Counts I&II), and conversion (Count IV), and demanding a valuation of his shares (Count III).

## DISCUSSION

In ruling on a 12(b)(6) motion, the court treats all well-pleaded allegations as true, and draws all reasonable inferences in Plaintiff's favor.  *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.  *Twombly*, 550 U.S. at 555.

Dr. Martin suggests that the court should not consider the Power of Attorney in this motion to dismiss because it is only "one element of Plaintiff's case, but not central to it."  (Pl.'s Resp. at 6.)  The court disagrees.  Ordinarily, on a 12(b)(6) motion the court may not rely on evidence outside the pleadings.  However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) *and cases cited therein*.  Dr. Martin's claims rest heavily on the existence of this Power of Attorney, which is also the foundation for the fiduciary duties allegedly breached by VCA; and therefore, the court will consider it.

4

**I.   Counts I & II: Breach of Fiduciary Duty[4]**

Counts I and II of Plaintiff's complaint allege that Defendants VCA and White breached their fiduciary duty to him when they wrongfully transferred his MVP shares to Dr. Vayuvegula. Dr. Martin specifically argues that the Shareholder Limited Power of Attorney he executed created a fiduciary relationship wherein VCA became his agent and had a duty to act in his best interests. Dr. Martin contends that no "Transfer Event" occurred under the parties' agreement. VCA's transfer of his stock was therefore contrary to his interests and constituted a breach of the fiduciary relationship. Defendants do not dispute that the Power of Attorney created a fiduciary relationship between VCA and Plaintiff, but urge that the plain language of the agreements between the parties undermine Plaintiff's claims.

**A.   Plain Language of the Agreement**

The parties agree that Maryland law governs this case, as stated in the Management Services Agreement. (Agreement, Ex. 1 to 2d Am. Compl.) Citing *King v. Bankerd*, 303 Md. 98, 492 A.2d 608 (1985), Plaintiff claims that the Power of Attorney he executed created fiduciary relationship with VCA. The court in *King* did acknowledge that "in exercising granted powers under a power of attorney, the attorney in fact is bound to act for the benefit of his principal and must avoid where possible that which is detrimental unless expressly authorized." *Id.* at 108, 492 A.2d at 613. *King* does not otherwise supports Plaintiff's claims, however. In *King*, a landowner filed suit against his attorney alleging breach of fiduciary duty after the attorney conveyed the land to plaintiff's wife. The court concluded that "an agent holding a broad power of attorney lacks the power to make a gift of the principal's property, unless that power (1) is expressly conferred, (2) arises as a necessary implication from the conferred powers, or (3) is clearly intended by the

---

[4]   Both Counts I and II relate to Defendants' alleged breach of fiduciary duty. Count I, however, is merely a request for damages for the breach of power of attorney and breach of fiduciary duty Plaintiff asserts in Count II. As a result, the court declines to address Count I separately.

parties, as evidenced by the surrounding facts and circumstances." *Id.* at 107, 612-13. In this case, no gratuitous transfer of Plaintiff's shares occurred, and Plaintiff has failed to show how *King* is otherwise applicable.

Under the Power of Attorney at issue, VCA had the right to "take any and all actions on the Shareholder's behalf to effectuate the provisions of Section 4.12 of the Agreement." (Shareholder Limited Power of Attorney, Ex. F to Agreement.) Section 4.12 of the Agreement explicitly authorizes the transfer of Dr. Martin's shares upon VCA's written instruction to Dr. Martin to transfer his shares to a "Designated Person." (Agreement, Ex. 1 to 2d Am. Compl.) A "Designated Person" is defined in the Agreement as "an individual licensed to practice medicine in the State, who is designated by the Manager (VCA) to take ownership of the Shares." (Agreement at § 4.12 (f).) Plaintiff does not challenge VCA's authority to transfer his shares, nor does he allege that Dr. Vayuvegula was not a "Designated Person" under the agreement.

Instead, he argues that the transfer of his shares "undermines the intent of Section 4.12" of the Agreement because no "Transfer Event" occurred. (2d Am. Compl. at 9, ¶¶ 7-9.) The parties' Agreement directs that all of the stock held by shareholders "be immediately deemed transferred to the Designated Person . . . without action by the Shareholders . . . immediately upon the occurrence of a Transfer Event." (Agreement at § 4.12.) The Agreement defines one instance of a "Transfer Event" as the "date of Manager's written instruction to a Shareholder to transfer the Shares to a Designated Person." (Agreement at 4.12 (f).) Plaintiff has failed to explain why VCA's March 30, 2010 letter transferring his shares does not constitute such an event as defined under the Agreement.

The court concludes that Dr. Martin's conclusory assertion does not pass muster under the *Iqbal/Twombly* standard. Dr. Martin urges that a determination of whether Defendants breached their fiduciary duties depends upon an analysis of all the facts and circumstances surrounding the formation and execution of the power of attorney, and that the court should deny this motion

6

because "no such facts and circumstances are set forth in the Plaintiff's Amended Complaint." (Pl.'s Resp. at 6-7.)  In admitting that "no such facts and circumstances" are set forth in his complaint, Martin effectively acknowledges the deficiency of his complaint.  A complaint need not include "detailed factual allegations," but plaintiff must, at minimum, "provide the factual 'grounds' of [Plaintiff's] entitlement to relief." *See, e.g., Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 547); *see also Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008) ("[A] defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case.")

### B. Claims Under the Maryland Code

In addition to his contract claim, Plaintiff argues that Defendants' transfer of his shares was "illegal, fraudulent and oppressive" under Maryland law.  (2d. Am. Compl. at 11, ¶¶ 12-14.) Defendants observe that Maryland recognizes no "'universal or omnibus tort for the redress of breach of fiduciary duty,' at least in a situation where other remedies exist." *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 803 (D. Md. 1998) (quoting *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (1997)); *see also Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.*, 190 F. Supp. 2d 785, 801 (D. Md. 2002) (confirming that "there is no independent tort for breach of fiduciary duty in Maryland.").

Plaintiff does draw upon several provisions of the Maryland Code of Corporations and Associations to support his claim for breach of fiduciary duty, but the court is hard-pressed to find the relevance of such provisions to this case.  Plaintiff first contends that VCA's March 30, 2010 letter did not constitute "notice" as required under MD. CODE ANN., CORPS. & ASS'NS § 2-505.  (2d Am. Compl. at 7, ¶ 35.)  The letter from Defendant White reads, in pertinent part: "Pursuant to Section 4.12 of the [Agreement], VCA is hereby providing notice of its intent to sell your stock interest in [MVP] to Satish Vayuvegula, effective April 1, 2010.  Enclosed is VCA's check for

7

$100.00 as required by the [Agreement]." Yet Dr. Martin has failed to articulate how § 2-505—which sets forth rules regarding permitted actions at shareholders meetings—is applicable to his claim for breach of fiduciary duty. Plaintiff also claims that he is entitled to a valuation of his shares as set forth in MD. CODE ANN., CORPS. & ASS'NS § 3-208 (2d Am. Compl. at 11, ¶ 14), but that statute is unrelated to his claim for breach of fiduciary duty.

Construing all facts in Plaintiff's favor, as this court must, the court concludes that Plaintiff has failed to alleged any facts that show he is plausibly entitled to relief and instead simply pleads conclusions. Defendants' motion as to Counts I and II is therefore granted.

## II.     Count III: Valuation and Purchase of Plaintiff's Shares

Dr. Martin seeks to compel Defendants to purchase his shares in MVP for fair value and requests an accounting from Defendants. The complaint makes clear that Plaintiff has already been paid the agreed value for his shares, however. According to the plain language of Section 4.12 of the Agreement, the purchase price for the shares was set at "One Dollar ($1.00) per Share but no more than One Hundred Dollars ($100.00) in total price for all the Shares," (Agreement § 4.12) and on March 30, 2010, Plaintiff received $100. Plaintiff has pleaded no facts suggesting he is entitled to further compensation. Thus, neither an accounting nor a valuing of Plaintiff's shares would prove useful at this stage. Moreover, under Maryland law, "[i]f the price for stock is determinable in accordance with the articles of incorporation or bylaws of the corporation, or by private agreement, that price controls." MD. CODE ANN. CORPS. & ASS'NS § 5-113(b)(1).

Plaintiff's additional citation to §§ 3-202 and 3-208 of the Maryland Code of Corporations and Associations is similarly unavailing. Both statutes speak to a shareholder's right to demand and receive payment of the fair value of his or her stock under a variety of circumstances, such as a corporate merger or an amendment of a corporation's charter. *See* MD. CODE ANN. CORPS. & ASS'NS §§ 3-202, 3-208. None of the cited circumstances is applicable here, nor has Plaintiff argued otherwise. Defendants' motion to dismiss to Count III is therefore granted.

**III.     Count IV: Conversion**

In Count IV, Dr. Martin claims that he requested the stock certificate for his shares of MVP, but Defendants failed to deliver the certificate allegedly as part of their effort to use the Stock Power and certificate to "usurp control" of MVP.[5] (2d Am. Compl. at 15, ¶ 8.) Plaintiff acknowledges, however, that MVP nevertheless "dealt with the Plaintiff as the owner of a minority of the issued and outstanding stock of the corporation." (2d. Am. Compl. at 6, ¶ 33.) According to Plaintiff, Defendants failure to deliver the certificate constitutes conversion.

Conversion is defined as "'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Lasater v. Guttmann*, 194 Md. App. 431, 446, 5 A.3d 79, 88 (Md. App. 2010) (quoting *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 155, 801 A.2d 1104, 1127 (2002) (citation omitted)). In general, "one cannot convert monies unless the monies alleged to have been converted are 'specific, segregated, or identifiable funds,'" but under Maryland law, stock certificates are the type of intangible protected property rights that may be the subject of a conversion claim. *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586, 631, 14 A.3d 1193, 1220 (Md. App. 2011) (citing *Lasater*, 194 Md. App. at 447); *Alliance for Telecommunications Industry Solutions, Inc. v. Hall*, Civil No. CCB-05-440, 2007 WL 3224589 *14 (D. Md. Sept. 27, 2007). Yet Plaintiff has failed to explain how Defendants' failure to deliver his stock certificates has harmed him. Indeed, Plaintiff has suffered no monetary loss, as he acknowledges, because Defendants issued him $100—the full value of his shares under the parties' Agreement. Plaintiff nevertheless asserts that "any transfers were made in derogation of the Agreement." (2d Am. Compl. at 15, ¶ 7.) Thus, Plaintiff's real concern appears to be Defendants' decision to transfer his

---

[5]     Plaintiff does not state when he requested the stock certificate. If he asserted this concern only after Defendants exercised the option to buy back the shares and transfer his interest to another doctor, this claim would appear merely to be another way of challenging that decision.

shares, not their failure to issue the stock certificates. As a result, Defendants' motion to dismiss as to Count IV is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion [32] is granted and Plaintiff's Second Amended Complaint is dismissed. Plaintiff has now made three attempts to state viable claims. The court will give him one final opportunity. Plaintiff will have leave to file a Third Amended Complaint, if he can do so consistent with Rule 11, within 21 days.

ENTER:

Dated: June 21, 2011

_____
REBECCA R. PALLMEYER
United States District Judge